**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

VIRGINIA JOHNSON, on behalf of herself and others similarly situated,

Plaintiff,

vs.

MEDIGAP LIFE, LLC,

Defendant.

Case No. 9:22-cv-81427-WM

**PLAINTIFF'S SURREPLY TO DEFENDANT'S MOTION FOR SANCTIONS**

Despite Medigap and its counsel's speculation, misleading arguments, and baseless personal attacks against Plaintiff's counsel (including based on purported events in other cases or conversations with other unidentified defense counsel),[1] Medigap's motion for sanctions should be denied because the evidence demonstrates that in this case Plaintiff's counsel thoroughly investigated each of Medigap's claims of consent, and litigated the matter in a reasonable manner consistent with the results of those investigations and the requirements of the case.

***First***, Medigap's attempt to challenge the sufficiency of Plaintiff's counsel's investigation regarding the November 23 letter is misleading and baseless.

The purported web-based consent (from a survey website that did not identify Medigap) Medigap identified in the November 23 letter specifically identifies the device type and browser involved in the supposed web interaction resulting in consent:

*Browser: Chrome Mobile WebView*

*Operating System: Android 12*

ECF 52-1. As a result, to investigate the purported consent, Plaintiff's counsel obtained the IP

[1] To the extent Medigap deems unsubstantiated allegations in other cases relevant to its sanctions motion, other consumers continue to sue Medigap under the TCPA for making telemarketing calls to them without consent, *see, e.g., Reimer v. Medigap Life, LLC*, 1:23-cv-00683-MSN-JFA (E.D. Va. filed May 24, 2023).

address for Plaintiff's only mobile device and the Chrome browser web history from that device. Second Kaufman Decl. [attached as Exhibit 1] at ¶ 2. Using this, Plaintiff's counsel confirmed that the IP address included in the consent was not Plaintiff's IP address and that Plaintiff's web history did not reflect a visit to the website Medigap identified (on the date Medigap identified or any other date). *Id*. at ¶ 3.[2]

Notwithstanding, Medigap now argues that Plaintiff's counsel's investigation was inadequate because Plaintiff's counsel did not obtain the IP address for any other device or the web history for any other browser. But, based on Medigap's own supposed consent evidence (which oddly it excluded from its filing and Plaintiff had to file, *see* ECF 52-1), there were no other devices or web browsers potentially at issue.

Similarly, to investigate the purported Facebook consent, Plaintiff's counsel obtained the Plaintiff's Facebook activity history, which is the only form of Facebook usage history Plaintiff's counsel is aware of (and Medigap and its counsel do not appear to contend that there was some other form of usage history that Plaintiff's counsel could have looked at). Second Kaufman Decl at ¶ 4. This activity history is not device specific and despite reflecting Plaintiff's interaction with myriad persons, organizations, posts, and other content, there was no evidence of any interaction with Defendant Medigap or any attempt to shop for insurance. *Id*.; *see, e.g.,* https://www.facebook.com/help/289066827791446?cms_platform=android-app&helpref=platform_switcher (last visited July 18, 2023). In fact, Plaintiff's only interaction on Facebook involving the term "Medigap" was with a Facebook page for "UnitedHealthcare®"—Plaintiff's own insurer, not a company Plaintiff was seeking an insurance quote from. First Kaufman Decl. (ECF 52-1) at ¶ 7; Johnson Decl. (ECF 52-2) at ¶¶ 9-10.

Consistent with Plaintiff's counsel's investigation, Plaintiff has consistently denied visiting the website or having the Facebook interactions Medigap claims in its November 23 letter. Johnson Decl. at ¶¶ 5-8. While nearly one month later, Medigap dredged up another website that Plaintiff

---

[2] While Medigap asserts that it's "statistically impossible" that an IP address with a geolocation in the same town the Plaintiff lives in is not hers, quite the opposite is true. In Ms. Johnson's town of 8,000 residents, selecting an IP address that is not the Plaintiff's is actually more than 99.99% likely. Indeed, it is public information that Ms. Johnson lives in Pocahontas, AR. *See* https://voterrecords.com/voter/88776268/virginia-johnson-gruver (last visited July 18, 2023). This is important because Fluent, Medigap's lead generator, has been called into question (including by the New York State Office of the Attorney General) for selling "fraudulent" leads.

did ultimately visit, there was nothing else Plaintiff's counsel could have or should have done to investigate the allegations in Medigap's November 23 letter. And based on that investigation, in the absence of any proof of Medigap having consent to call the Plaintiff, there is likewise no basis to conclude that Plaintiff's counsel should have done anything differently in the litigation—including by serving discovery on December 5, 2022 and a settlement demand[3] on December 6, 2022 with a then existing December 19, 2022 class certification deadline and a March 23, 2023 non-bifurcated, class and merits discovery cutoff. *See, e.g., Lodestar Anstalt v. Route 66 Junkyard Brewery*, No. CIV 17-0062 JCH/JHR, 2018 U.S. Dist. LEXIS 39216, at *13-14 (D.N.M. Mar. 9, 2018) ("Finally, Section 1927 sanctions are not appropriate here…Here, Plaintiff has failed to establish that Defendants' counsel acted either intentionally or with reckless disregard of his duties to the court ***by merely seeking to reopen discovery to clarify a contested issue of fact***. As such, the Court will not award sanctions under Section 1927.") (emphasis added); *cf. Jones v. Int'l Riding Helmets*, 49 F.3d 692, 695-96 (11th Cir. 1995) (cited in Medigap's reply) ("This is not a case where discovery later revealed that there was no reasonable basis for the complaint. Rather, in this case, the formulation of the plaintiffs' discovery requests, and the specific dates in those requests, reveal that Roseman did not believe that the complaint against IRH was well-grounded at the time he signed the pleading. Roseman concedes that he knew that IRH was incorporated in 1986. His later actions reveal that he also knew that the helmet was manufactured in 1985 and therefore could not have been made by IRH. Nevertheless, he signed the complaint, specifying no specific date of purchase, and sued IRH."). Indeed, conducting discovery to comply with a scheduling order is not bad faith; it is required.

---

[3] In Plaintiff's counsel's experience, *see* First Kaufman Decl. at ¶¶ 15-16, individual settlements in TCPA cases involve releases that are far broader than the plaintiff's TCPA claims and specifically include state consumer protection act claims that provide for attorneys' fees, even where such claims have not been asserted. *See, e.g.,* Ark. Code § 4-88-113(f) ("Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees."); *see also Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 U.S. Dist. LEXIS 124202, at *23 (E.D. Pa. Sep. 12, 2016) (approving class action settlement that provided class members more than their maximum statutory damages for the sole statutory claim asserted in the action). Plaintiff's counsel's email conveying the settlement demand did not specifically itemize all of the terms that are regularly included in settlements, which Plaintiff's counsel reasonably expected would be included in any settlement of this action. First Kaufman Decl. at ¶¶ 15-16.

***Second***, Plaintiff's counsel did not thereafter act unreasonably despite ultimately dismissing the case.

The first time any semblance of evidence was presented that purportedly demonstrated consent to call the Plaintiff was as part of Medigap's motion to compel arbitration on December 29—and even then it was inadequate to satisfy Medigap's burden regarding its consent defense or to compel arbitration.

On December 21, when the parties conferred regarding Medigap's motion to compel arbitration and its motion to stay discovery pending its motion to compel arbitration, Medigap's counsel had provided (1) two screenshots of a webform from a job listing website and (2) the job listing website's terms and conditions that included an arbitration provision. Second Kaufman Decl. at ¶ 5 and Ex. A; ECF 34-1 at 12-17. Notably, however, the job listing website's screenshots and terms and conditions did not identify Medigap or otherwise provide a list of third party "Marketing Partners" entitled to enforce the terms and conditions. *Id*. Nor did Medigap otherwise provide this. Second Kaufman Decl. at ¶ 6. Notwithstanding, Plaintiff's counsel investigated this possibility and confirmed that Plaintiff was unaware of Medigap being a Marketing Partner on the job listing website on the date in question that was authorized to make telemarketing calls to her regarding insurance. *Id*. at ¶ 7. As a result, there was again no basis for Plaintiff's counsel to conclude that Medigap had an affirmative defense to Plaintiff's claim, or was entitled to compel arbitration, as a third party beneficiary of terms and conditions on the job listing website. *Id*. at ¶ 8; *see, e.g.*, *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 WL 6061919, at *7–9 (D. Mass. Dec. 13, 2021) (alleged consent was not "TCPA-compliant" because the lead generator's consent form did not include the defendant's name or provide the disclosures required by the e-sign act).

Eight days later, on December 29, Medigap filed its motion to compel arbitration together with a declaration from its lead generator, Fluent. ECF 34-1. Although that declaration stated that "Fluent's business records confirm" that the job listing website's terms and conditions would have included Medigap as a Marketing Partner on the date in question, it did not actually include the list of Marketing Partners or any other business records the declarant relied on. *Id*. at ¶ 8; *cf. Richards v. Now, LLC*, No. 2:18-cv-10152-SVW-MRW, 2019 U.S. Dist. LEXIS 77979, at *27 (C.D. Cal. May 8, 2019) ("The failure to attach any supporting documentation necessarily means that Lu's declaration does not have a proper foundation and is not properly authenticated under the

Federal Rules of Evidence."); *see also Lizarraga-Davis v. Transworld Sys.,* No. 18-cv-04081-BLF, 2022 U.S. Dist. LEXIS 126224, at *25 (N.D. Cal. July 15, 2022) ("[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness.").

Given Plaintiff's counsel's knowledge regarding Fluent's prior, fraudulent conduct in connection with generating web based leads, and Fluent's failure to attach any of the purported business records on which its declarant's declaration was based, Plaintiff's counsel issued a subpoena to Fluent. Plaintiff also opposed Medigap's motion to stay discovery (which the parties met and conferred about more than one week before Medigap filed its motion to compel arbitration) to the extent that it would have stayed discovery, including specifically from Fluent, relating to Medigap's right to enforce the job listing website's terms and conditions.

As it was Medigap's burden to demonstrate that it was entitled to enforce the job listing website's terms and conditions—and that only evidence of this was hearsay at best—this was far from unreasonable, regardless of the fact that Plaintiff and her counsel ultimately made the decision by January 12 to not oppose the motion to compel arbitration and to dismiss the case without awaiting Fluent's subpoena response, which they were entitled to do with Medigap's agreement.

***Third***, Plaintiff's counsel adequately conferred with Medigap's counsel. Medigap's argument to the contrary is based exclusively on the false premise that Plaintiff's counsel should have agreed to dismiss Plaintiff's claim sooner. However, there is nothing to actually support that conclusion. When presented with Medigap's November 23 letter, Plaintiff's counsel thoroughly investigated Medigap's claims and found there was no basis to conclude that Medigap had the Plaintiff's consent. Likewise, when presented with the screenshots from the job listing website and the job listing website's terms and conditions that Medigap intended to rely on to compel arbitration, Plaintiff's counsel thoroughly investigated Medigap's claims and found there was no basis to conclude that Medigap was entitled to enforce the website's terms and conditions. And, even when Medigap filed its motion to compel arbitration supported by Fluent's declaration, Plaintiff's counsel again investigated Medigaps claim and found there was no basis to conclude the Medigap was entitled to enforce the job listing website's terms and conditions. While Medigap and its counsel refuse to believe Plaintiff and her counsel, that provides no basis to conclude that Plaintiff's counsel failed to adequately confer when necessary.

Nor does Medigap's counsel's self serving assertion that Plaintiff's counsel's conduct in

another case involving Medigap's counsel or any other unnamed defense counsel warrants the conclusion that they acted unreasonably in this case, because they didn't.[4] *See, e.g., Klein v. Weidner*, No. 08-3798, 2017 U.S. Dist. LEXIS 101581, at *10 (E.D. Pa. June 30, 2017) ("Section 1927 'limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court' from which sanctions are sought."). In fact, the only party that can be accused of failing to meaningfully confer regarding a motion in this case is Medigap in connection with its motion for sanctions. First Kaufman Decl. at ¶ 22.

***

Ultimately, Plaintiff's counsel thoroughly investigated each of Medigap's purported consents, litigated the cases as dictated by the results of those investigations and the case schedule, and dismissed the case even when it could have reasonably continued litigation because Medigap failed to satisfy its burden to demonstrate that it was entitled to enforce the job listings website's terms and conditions. Plaintiff's counsel did not act vexatiously and did not needlessly multiply proceedings.

The Court should therefore deny Medigap's motion for sanctions.

Dated: July 18, 2023

Respectfully submitted,

*/s/ Avi R. Kaufman*

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Counsel for Plaintiff*

[4] While it would be a violation of the attorney-client privilege for Plaintiff's counsel to divulge the reasons the plaintiff in *Park Place* ultimately decided to dismiss his claims, it should be obvious that even a frivolous threat of sanctions has a chilling effect on a consumer plaintiff's desire to pursue class action claims.

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

VIRGINIA JOHNSON, on behalf of herself and others similarly situated,

Plaintiff,

vs.

MEDIGAP LIFE, LLC,

Defendant.

Case No. 1:22-cv-00739

**SECOND DECLARATION OF AVI R. KAUFMAN**

Avi R. Kaufman declares as follows:

1. I am one of Plaintiff's attorneys in this action. I submit this declaration in support of Plaintiff's Surreply in Opposition to Defendant's Motion for Sanctions. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. To investigate the purported consent provided in Medigap's November 23 letter, Plaintiff's counsel obtained the IP address for Plaintiff's only mobile device and the Chrome browser web history from that device.

3. Using this, Plaintiff's counsel confirmed that the IP address included in the consent provided in Medigap's November 23 letter was not Plaintiff's IP address and that Plaintiff's web history did not reflect a visit to the website Medigap identified (on the date Medigap identified or any other date).

4. Similarly, to investigate the purported Facebook consent, Plaintiff's counsel obtained the Plaintiff's Facebook activity history, which is the only form of Facebook usage history Plaintiff's counsel is aware of (and Medigap and its counsel do not appear to contend that there

was some other form of usage history that Plaintiff's counsel could have looked at). This activity history is not device specific and despite reflecting Plaintiff's interaction with myriad persons, organizations, posts, and other content, there was no evidence of any interaction with Defendant Medigap or any attempt to shop for insurance. *See, e.g.*, https://www.facebook.com/help/289066827791446?cms_platform=android-app&helpref=platform_switcher (last visited July 18, 2023).

5. On December 21, when the parties conferred regarding Medigap's motion to compel arbitration and its motion to stay discovery pending its motion to compel arbitration, Medigap's counsel had provided (1) two screenshots of a webform from a job listing website and (2) the job listing website's terms and conditions that included an arbitration provision. The job listing website screenshots are attached as Exhibit A. The job listing website's terms and conditions were previously filed at ECF 34-1 at 12-17.

6. Notably, however, the job listing website's screenshots and terms and conditions did not identify Medigap or otherwise provide a list of third party "Marketing Partners" entitled to enforce the terms and conditions. Exhibit A & ECF 34-1 at 12-17. Nor did Medigap otherwise provide this.

7. Notwithstanding, Plaintiff's counsel investigated this possibility and confirmed that Plaintiff was unaware of Medigap being a Marketing Partner on the job listing website on the date in question that was authorized to make telemarketing calls to her regarding insurance.

8. As a result, there was again no basis for Plaintiff's counsel to conclude that Medigap had an affirmative defense to Plaintiff's claim, or was entitled to compel arbitration, as a third party beneficiary of terms and conditions on the job listing website.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: July 18, 2023

*<u>/s/ Avi R. Kaufman</u>*
Avi R. Kaufman

# EXHIBIT A

skip

Careers&Jobs

NEW JOB LISTINGS

# Welcome!

Enter your name and email to continue

FIRST NAME
Virginia

LAST NAME
Johnson

EMAIL ADDRESS
vmgjohnson@gmail.com

By clicking below, I agree to the Privacy Policy which details personal info collection practices and Terms & Conditions, including a mandatory arbitration provision, from FindDreamJobs.com, StartACareerToday, NewJobConnections, Talent and Nexxt.

Submit

CareersandJobs is a job search engine. We are not an agent or representative of any Employer. Registered trademarks are the property of their respective owners who do not sponsor or endorse this website.

To gain access to the job listing, you must agree to our Terms & Conditions and Privacy Policy, provide certain personally identifiable information and consent to our sharing such information with our marketing partners for which we may be compensated.

© 2011-2022 CareersandJobs.co All rights reserved.

CA Consumers: Do Not Sell My Info | Notice of Collection
Terms & Conditions | Privacy Policy | FAQ | Contact Us

skip

Careers&Jobs

NEW JOB LISTINGS

# Almost Done!

Confirm your age and phone number to continue

| MONTH | DAY | YEAR |
|---|---|---|
| FEB | 21 | 1951 |

PHONE
5303630720

By checking "I AGREE" and clicking "SUBMIT" I understand that I expressly consent to be called and/or receive text messages by our Marketing Partners at the landline or mobile phone number I provided. I confirm that the number I provided is accurate and I am the regular user of the phone and that the call and/or text message may be made using an autodialer and may include prerecorded messages. I understand my consent is not required to perform a job search, or to purchase or use any goods or services offered.

For SMS message campaigns: Text STOP to stop and HELP for help. Msg & data rates may apply. Periodic messages; max. 30/month.

☑ I Agree

Submit

CareersandJobs is a job search engine. We are not an agent or representative of any Employer. Registered trademarks are the property of their respective owners who do not sponsor or endorse this website.

To gain access to the job listing, you must agree to our Terms & Conditions and Privacy Policy, provide certain personally identifiable information and consent to our sharing such information with our marketing partners for which we may be compensated.

© 2011-2022 CareersandJobs.co All rights reserved.

CA Consumers: Do Not Sell My Info | Notice of Collection
Terms & Conditions | Privacy Policy | FAQ | Contact Us